**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

November 17, 2020

Richard P. Rollo, Esq.
Kevin M. Gallagher, Esq.
Travis S. Hunter, Esq.
Nicole K. Pedi, Esq.
Angela Lam, Esq.
Christian C.F. Roberts, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Brandyn Perryman,
Elizabeth Greene,
Graham Greene, Benjamin Speck,
Patrick Larson, Richard LeBaron,
and Marlene Peña

Steven L. Caponi, Esq.
Matthew B. Goeller, Esq.
K&L GATES LLP
600 King Street, Suite 901
Wilmington, Delaware 19801

RE: *Stimwave Technologies Incorporated v. Laura Tyler Perryman*,
C.A. No. 2019-1003-SG

Dear Counsel:

Having considered the parties' positions at oral argument and the briefing of the ten Motions to Dismiss before me in this matter, I write briefly to address seven of those ten Motions—specifically, those Motions to Dismiss submitted by *pro se* defendants Elizabeth Greene, Graham Greene, Benjamin Speck, Patrick Larson, Richard LeBaron, Brandyn Perryman, and Marlene Peña (collectively, the "Individual Defendants"). This Letter Opinion dismisses all seven Individual

Defendants without prejudice. My reasoning follows a brief recitation of the facts as they pertain to the Individual Defendants.

### **Facts**[1]

#### *Background Dispute*

This litigation follows a protracted struggle between Plaintiff Stimwave Technologies Inc. ("Stimwave" or the "Company") and Defendant Laura Perryman for control of Stimwave and its assets. Perryman founded Stimwave in 2010 "for the purpose of treating patients who have chronic pain with modern, minimally invasive, implantable medical technology."[2] The Company develops and manufactures medical devices that alleviate chronic pain.[3] In 2013, Perryman also founded Micron Devices, LLC ("Micron"). Micron allegedly served as a centralized support team for other operating companies, including Stimwave, and it licensed the relevant intellectual property to Stimwave.[4] After Stimwave attracted "[s]ignificant [o]utside [i]nvestments,"[5] Perryman caused Micron to assign its intellectual property rights and related contracts to Stimwave, signing the patent assignments on behalf of Micron and Stimwave herself.[6] After the assignments, Micron served no

---

[1] The facts, except where otherwise noted, are drawn from the Verified Amended Complaint ("Compl."), Dkt. No. 88, and exhibits or documents incorporated therein, and are presumed true for the purposes of these Motions to Dismiss.
[2] Compl. ¶ 26.
[3] Compl. ¶ 27.
[4] Compl. ¶ 28.
[5] Compl. ¶ 9.
[6] Compl. ¶¶ 41–42.

remaining purpose, and on December 28, 2018, Perryman allegedly executed and filed a Certificate of Cancellation with the Delaware Secretary of State.[7]

A year later, on December 16, 2019, Stimwave filed a verified complaint, alleging, among other things, that Perryman had used Company assets to pay for her son's apartment, to further her personal interests, and to pay bonuses to her close friends.[8] According to the Complaint, Perryman hid these activities by ordering accounting staff to doctor invoice references on customers' checks.[9] Upon discovering the alleged misconduct, Stimwave's board of directors removed Perryman as CEO.

After her removal, Perryman allegedly engaged in various actions to undermine Stimwave and wrest control of its property from the Company—actions that are the subject of this case, though not this Letter Opinion. For example, Perryman allegedly spread "a false narrative that Micron never assigned" its intellectual property to Stimwave.[10] To facilitate this narrative, Perryman executed and filed a Certificate of Correction of the Certificate of Cancellation with the Secretary of State.[11] This Certificate of Correction purported "to render the Certificate of Cancellation 'null and void' on the basis that '[d]ue to a clerical error,

---

[7] Compl. ¶ 43.
[8] Compl. ¶¶ 65, 146, 172, 174–176.
[9] Compl. ¶ 3.
[10] Compl. ¶ 191.
[11] Compl. ¶ 192.

the entity was voluntarily cancelled when it should not have been."[12] Perryman then caused Micron to assign the intellectual property that had previously been assigned to Stimwave to a different entity.[13]

### *The Individual Defendants*

The Individual Defendants are all former employees of Stimwave who have since left the Company and are now employed by companies allegedly controlled by Perryman.[14] None of the Individual Defendants are alleged to have been officers or directors of the Company.[15]

According to the Complaint, on December 14, 2019, Perryman entered the Company's headquarters in Pompano Beach, Florida, along with five of the seven Individual Defendants, and removed property. The parties do not dispute that the aforementioned Defendants entered Company headquarters and removed property; rather, they dispute whether the removed property was Company property or individual property.

The Complaint alleges that the Individual Defendants aided Perryman in this "raid" of the Company's headquarters, accepted funds from the Company for personal use, or assisted Perryman in attempting to contest Stimwave's ownership

---

[12] Compl. ¶ 193.
[13] Compl. ¶ 192.
[14] Compl. ¶¶ 10–21.
[15] Compl. ¶¶ 15–21.

4

of the intellectual property.[16]  They are accordingly allegedly liable for aiding and abetting Perryman's breaches of fiduciary duty.  The Individual Defendants initially each filed Motions to Dismiss,[17] and Stimwave filed an Omnibus Answering Brief.[18] On November 6, 2020, five of the Individual Defendants—Elizabeth Greene, Graham Greene, Patrick Larson, Richard LeBaron, and Benjamin Speck (collectively, the "Voluntary Dismissal Defendants")—each faxed letters to this Court, notifying the Court that they "would prefer to have [me] hear this matter . . . [and] would like to withdraw [their] motion[s] to dismiss so [this Court] can hear [their] case[s] and [they] will answer [the] complaint and file . . . counterclaims" (the "Faxed Letters").[19]  About an hour and a half after those faxed letters were docketed, Stimwave filed a Notice of Voluntary Dismissal Without Prejudice, purporting to dismiss the Voluntary Dismissal Defendants.[20]  The morning of November 9, 2020,

---

[16] Pl. Stimwave Technologies Inc.'s Omnibus Answering Br. in Opp'n to Mots. To Dismiss Filed by Defs. Brandyn Perryman, Benjamin Speck, Richard Lebaron, Patrick Larson, Graham Greene, Marlene Pena, and Elizabeth Green ("Pl.'s Answering Br.") 5–8, Dkt. No. 273.

[17] Brandyn Perryman Opening Brief in Support of Motion to Dismiss, Dkt. No. 224; Benjamin Speck Opening Brief in Support of Motion to Dismiss, Dkt. No 225; Richard LeBaron Opening Brief in Support of Motion to Dismiss, Dkt. No. 226; Patrick Larson Opening Brief in Support of Motion to Dismiss, Dkt. No. 227; Graham Greene Opening Brief in Support of Motion to Dismiss, Dkt. No. 228; Marlene Pena Opening Brief in Support of Motion to Dismiss, Dkt. No. 229; Elizabeth Greene Opening Brief in Support of Motion to Dismiss, Dkt. No. 300.

[18] Pl.'s Answering Br.

[19] Faxed letter to Vice Chancellor Glasscock from Richard LaBaron filed 11-6-20, Dkt No. 344; Faxed letter to Vice Chancellor Glasscock from Patrick Larson filed 11-6-20, Dkt No. 345; Faxed letter to Vice Chancellor Glasscock from Graham Greene filed 11-6-20, Dkt No. 346;  Faxed letter to Vice Chancellor Glasscock from Benjamin Speck filed 11-6-20, Dkt No. 347; Faxed letter to Vice Chancellor Glasscock from Elizabeth Greene filed 11-6-20, Dkt No. 348.

[20] Notice of Voluntary Dismissal Without Prejudice, Dkt. No. 349.

the day on which the Court was to hear oral argument, the Court received copies of the Voluntary Dismissal Defendants' Answer and Verified Counterclaims. As of the writing of this letter, that Answer has not been filed on the docket.

Two of the Individual Defendants, Brandyn Perryman (Laura Perryman's son, whose apartment is alleged to be partly funded by the Company's assets) and Marlene Peña, did not file anything purporting to withdraw their Motions to Dismiss.

I heard oral argument on, among other things, the Individual Defendants' Motions to Dismiss (focusing primarily on the Motions of Brandyn Perryman and Marlene Peña) and the issue of whether the Voluntary Dismissal Defendants had, in fact, withdrawn their Motions to Dismiss, exposing them to voluntary dismissal under Court of Chancery Rule 41(a)(1). During the oral argument, the Voluntary Dismissal Defendants made clear that they would prefer to remain in this case, but if unable to, would like to be dismissed with prejudice.

This Letter Opinion addresses *only* the Motions to Dismiss filed by the Individual Defendants and the Rule 41(a)(1) issue; the remaining outstanding Motions will be addressed in a subsequent opinion.

**Analysis**

*The Voluntary Dismissal Defendants withdrew their Motions to Dismiss and have been dismissed without prejudice under Rule 41(a)(1).*

The issue presented here may strike the reader as an Erewhon-like inversion of this Court's typical consideration of motions to dismiss. The Voluntary Dismissal Defendants filed Motions to Dismiss, then decided they would rather litigate Stimwave's claims against them—as well as their own counterclaims against Stimwave—in this forum. They accordingly withdrew their Motions to Dismiss, which suited Stimwave, which itself regretted its choice of forum against these Defendants. Therefore, Stimwave immediately purported to dismiss its claims against the Voluntary Dismissal Defendants, without prejudice, upon receiving their withdrawal of the Motions to Dismiss. The following business day, the Voluntary Dismissal Defendants provided the Court with a purported Answer and Counterclaims. As a result, those Defendants, who are *pro se*, are in the odd position of asking me to disregard their withdrawal of the Motions to Dismiss pending docketing of their Answer to the Complaint, so that they may continue to litigate here. Conversely, the Plaintiff is in the odd position of opposing that request. I find that Stimwave's voluntary dismissal of these Defendants was effective; nothing prevents the Voluntary Dismissal Defendants from recasting their defunct Answer

7

and Counterclaim as a new action or including these issues in a motion to intervene, however.[21]

Rule 41(a)(1) allows plaintiffs to, without permission of the Court, dismiss an action "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment" as long as the complaint is not subject to a motion to dismiss where the plaintiff has chosen to file an answering brief.[22] In short, if a defendant has not filed an answer or a motion for summary judgment, and there is no outstanding motion to dismiss in opposition to which the plaintiff has filed an answering brief, the plaintiff may dismiss the action without prejudice.

Stimwave notes that the Voluntary Dismissal Defendants each withdrew their Motions to Dismiss on November 6 and attempted to file their Answer on November 9. Thus, between November 6 and November 9, Stimwave was able to voluntarily dismiss the Voluntary Dismissal Defendants without prejudice under Rule 41(a)(1). Accordingly, Stimwave argues, its voluntary dismissal on November 6 was valid and the Voluntary Dismissal Defendants have been dismissed without prejudice. These Defendants nonetheless seek to remain parties-defendant here.

---

[21] While these Defendants, like all litigants, have the right to proceed *pro se*, they would, I think, find counsel a wise investment should they seek to either file a new action or attempt to intervene.
[22] Ct. Ch. R. 41(a)(1).

The inverted nature of this issue is likely the result of the Voluntary Dismissal Defendants' lack of representation. It is clear that the Voluntary Dismissal Defendants could have concurrently filed their Answer together with a notice of withdrawal of the Motions to Dismiss, thus depriving the Plaintiff of a window of opportunity to voluntarily dismiss them without Court permission. "[T]his Court has the discretion to exhibit some degree of leniency toward a *pro se* litigant, in order to see that his case is fully and fairly heard."[23] But "self-representation is not a blank check for defect" and does not permit the Court to ignore its own Rules. Here, although the Voluntary Dismissal Defendants are dismissed from the case, they are not without recourse. They may still vindicate their counterclaims in this forum by, for example, filing a separate pleading that opens a new case against Stimwave.

The Voluntary Dismissal Defendants' submissions, received on November 6, clearly withdrew their Motions to Dismiss as of that time. Stimwave thus had the ability to voluntarily dismiss the Voluntary Dismissal Defendants without prejudice under Rule 41(a)(1). I find that they have done so and those Defendants are hereby dismissed without prejudice.

---

[23] *Aziz v. Tsappas*, 2019 WL 6724426, at *1 (Del. Ch. Nov. 1, 2019).

9

*The Court has no personal jurisdiction over Brandyn Perryman and*
*Marlene Peña, and accordingly they are dismissed from this action.*

Neither Brandyn Perryman nor Marlene Peña withdrew their Motions to Dismiss, and I address their Motions on the merits. Like the Voluntary Dismissal Defendants, Brandyn Perryman and Marlene Peña both argued that this Court lacks personal jurisdiction and that the Complaint fails to state a claim. "A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice."[24] I must address jurisdictional questions before reaching substantive issues.[25] "Under Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of demonstrating this Court's jurisdiction over a nonresident defendant."[26]

Brandyn Perryman and Marlene Peña argue that this Court does not have personal jurisdiction over them because they were neither officers nor directors of Stimwave and have no other connection to Delaware. The Plaintiff responds that personal jurisdiction exists by conspiracy jurisdiction, because Brandyn Perryman and Marlene Peña both participated in Laura Perryman's raid on the Company's

---

[24] *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)).

[25] *Id.* at 268–69 (Del. 1993) (remanding because "the Court of Chancery should have decided the personal jurisdictional challenge regarding the individual defendants, raised by Exide's motion to dismiss, prior to addressing the substantive aspect of that motion with respect to all defendants").

[26] *Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at *8 (Del. Ch. Oct. 31, 2013).

headquarters, thus aiding in a breach of fiduciary duty. The Plaintiff also alleges that Marlene Peña attempted to "induce Company employees to switch to a new [email] server . . .; and fir[ed] a new employee who left a good job to join Stimwave."[27] And the Plaintiff alleges that Laura Perryman used Company funds to pay for Brandyn Perryman's apartment, presumably with Brandyn's knowing participation.[28] I find that these allegations are insufficient to establish conspiracy jurisdiction.

There are five elements required for this Court to exercise conspiracy theory jurisdiction:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[29]

"While a valid path to jurisdiction, the conspiracy theory of personal jurisdiction is very narrowly construed to prevent plaintiffs from circumvent[ing] the minimum contacts requirement."[30] "Therefore, application of personal jurisdiction under the conspiracy theory requires factual proof of each enumerated element."[31]

---

[27] Pl.'s Answering Br. 7–8.
[28] Pl.'s Answering Br. 5–6.
[29] *Instituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).
[30] *Morrison v. Berry*, 2020 WL 2843514, at *13 (Del. Ch. June 1, 2020) (internal quotation marks omitted).
[31] *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 330 (Del. Ch. 2003).

The Plaintiffs do not allege facts sufficient to establish element (3) of the five-part test. Laura Perryman's "raid" on the Company's headquarters did not occur in Delaware, but rather in Florida. Brandyn Perryman's apartment, which Laura Perryman allegedly used Company funds to pay for, is not alleged to be in Delaware. And Marlene Peña's actions in attempting to induce Company employees to switch to a new email server and her firing of an employee were both actions that occurred at the employees' locations—presumably in Florida, but, at the very least, the Complaint does not allege that the employees were located in Delaware.

The Plaintiff's theory appears to be that Laura Perryman is subject to Delaware jurisdiction for breaches of fiduciary duty, so aiders and abettors of those breaches are also subject to Delaware jurisdiction as participants of a conspiracy against a Delaware corporation. But this would push conspiracy jurisdiction beyond constitutional limitations, on the facts here. This Court has personal jurisdiction over Laura Perryman by dint of her statutorily-implied consent as a director of a Delaware corporation; but a conspirator aiding or abetting a breach of fiduciary duty that occurred *entirely in Florida* has not impliedly given his consent and would not have reasonably expected that his actions would cause him to be subject to jurisdiction in the company's state of incorporation.

Here, no contacts are alleged to exist between either Brandyn Perryman or Marlene Peña and Delaware. Their only connection to Delaware is that the

Company happens to be incorporated in this state. Put another way, the Plaintiff's argument for conspiracy jurisdiction would have this Court exercise jurisdiction solely because Laura Perryman was still a fiduciary of the Company at the time of the "raid"—had she not been, even under the Plaintiff's theory, personal jurisdiction would fail. It cannot be that this Court's jurisdiction over a person hinges on the *status* of a *conspirator* of that person, rather than on the *actions* of the defendant *himself*.[32] That conclusion would violate the constitutional requirement of *International Shoe Co. v. State of Washington*,[33] which held that a forum state cannot exercise personal jurisdiction without sufficient minimum contacts between the defendant and the forum state, such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice."[34]

For the foregoing reasons, this Court has no personal jurisdiction over Brandyn Perryman and Marlene Peña. They are hereby dismissed without prejudice. Further, Elizabeth Greene, Graham Greene, Benjamin Speck, Patrick Larson, and Richard LeBaron are dismissed without prejudice pursuant to the Plaintiff's voluntary dismissal under Rule 41(a)(1).

---

[32] *See id.* ("While [the plaintiff] does allege that a conspiracy existed, and that the Advisory Board Defendants were parties to that conspiracy, he offers no factual allegation that a substantial act or effect of the conspiracy occurred in Delaware. Without some showing that some act or effect occurred in Delaware, [the plaintiff] cannot satisfy the third element of the conspiracy theory test, and his claim for personal jurisdiction on this ground must also fail.").

[33] 326 U.S. 310 (1945).

[34] *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 1992 WL 127567, at \*2 (Del. Ch. May 28, 1992).

To the extent the foregoing requires an order to take effect, it is SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

cc:  All counsel of record (by *File & ServeXpress*)